**BALTZER, Admr.**

v.

**OHIO DEPARTMENT OF REHABILITATION AND CORRECTION.**

Court of Claims of Ohio.

No. 91–07119.

Decided April 19, 1993.

*David J. Scacchetti* and *Philip E. Pitzer,* for plaintiff.

*Lee Fisher,* Attorney General, and *M. Celeste Cook,* Assistant Attorney General, for defendant.

Russell Leach, Judge.

On October 26, 1992, this action came before the court for trial on the sole issue of liability. Plaintiff, Mary Ann Baltzer, filed this wrongful death action in her capacity as the administrator of the estate of her son, Bruce N. Baltzer ("Baltzer"), against defendant Department of Rehabilitation and Correction.

Plaintiff alleges that Baltzer's death was the result of the medical negligence of the prison physician, English Weston, M.D. ("Dr. Weston"), in failing to adequately intervene, treat, and medicate Baltzer's asthmatic condition. Defendant denies that it was negligent and asserts that plaintiff's decedent's own actions and inactions were the proximate cause of his death. The court, having considered the evidence and arguments of counsel, renders the following decision.

At the time of his death, plaintiff's decedent was an inmate in the custody and control of defendant pursuant to R.C. 5120.16 at the Lebanon Correctional Institution. On June 20, 1990, at approximately 2:30 a.m., plaintiff's decedent experienced trouble breathing, presumably as a result of an asthma attack. In response, inmate Thomas Harris, Baltzer's cellmate, summoned Corrections

Officers ("C.O.") Garth Feltner and Martin Kinsworthy for assistance. Upon arriving at the cell, C.O. Feltner was asked by Baltzer to obtain a Proventil inhaler from the prison infirmary. C.O. Feltner proceeded to the infirmary, where he was given an inhaler from Nurse Denise Lewis. Baltzer had a current prescription for the inhaler. C.O. Feltner immediately returned to Baltzer's cell, where he gave Baltzer the inhaler.

At this time, C.O. Kinsworthy asked Baltzer if he wanted to go to the infirmary for breathing treatment. Baltzer stated that all he needed was the inhaler and refused to go to the infirmary. Inmate Harris testified that Baltzer appeared to be relieved of any breathing problems after using the inhaler. Both C.O. Feltner and C.O. Kinsworthy testified that Baltzer was coherent and did not exhibit any unusual behavior during their conversation.

At 6:30 a.m., C.O. Nathan Briner, Jr. conducted the morning count for K-block, where Baltzer was housed. C.O. Briner testified that Baltzer was sitting Indian style on his bunk bed at count time. At approximately 6:50 a.m., inmate Harris called C.O. Briner to the cell to check on Baltzer, who was still sitting on his bunk bed, but slumped over. At this time, C.O. Briner discovered that Baltzer was cold and was not exhibiting a pulse. C.O. Briner initiated a "Code 1" emergency alert at approximately 6:55 a.m. The trauma team was alerted and responded at 6:58 a.m. Baltzer was subsequently pronounced dead at the scene by Dr. Weston.

This cause of action was brought pursuant to Ohio's wrongful death statute, R.C. 2125.01. More specifically, plaintiff's claim for a right to relief sets forth an action sounding in medical negligence. Plaintiff alleges that defendant, acting by and through its employees and agents, deviated from the accepted standards of medical care in its treatment of plaintiff's decedent.

 Plaintiff bears the burden of proving by a preponderance of the evidence that defendant, through its agents, owed a duty to Baltzer, that there was a breach of the duty, and that the breach was a direct and proximate cause of his death. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467. Owing to the complexity of the cause and effect relationship, in a medical negligence case such breach can only be proven by a presentation of expert testimony. As set forth in *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673, paragraph one of the syllabus:

"In order to establish medical malpractice, it must be shown by a preponderance of evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to some particular thing or things that such a

physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things."

In the case at bar, the court had the benefit of outstanding expert witnesses. There was considerable testimony from the medical experts as to what treatment a physician of ordinary skill, care and diligence should have administered to evaluate and treat the medical problems experienced by Baltzer.

Plaintiff's expert, Dr. Bernard Master, offered the opinion that to a reasonable degree of medical certainty, Dr. Weston failed to properly manage Baltzer's asthmatic condition, which directly and proximately resulted in his death from an asthma attack on June 20, 1990. More specifically, Dr. Master testified that Dr. Weston deviated from acceptable community standards of care by failing to prescribe the proper dosages of theophylline and Prednisone to control Baltzer's asthma. Additionally, Dr. Master testified that Dr. Weston failed to monitor the unrestricted use of the Proventil inhaler prescribed to Baltzer. Finally, Dr. Master testified that Dr. Weston failed to intervene during Baltzer's episodes of progressive and continuous respiratory distress.

Defendant's expert, Dr. Kevin Merigian, rendered his expert opinion that, within a reasonable degree of medical certainty, Baltzer ingested heroin on June 20, 1990, which metabolized into morphine and depressed his respiratory system and clouded his judgment to such a degree that he did not seek medical attention even though he was apparently suffering from an asthma attack that had the potential of becoming fatal. Dr. Merigian further testified that Baltzer's death from the asthma attack on June 20, 1990, was a direct result of his failure to seek medical assistance.

Additionally, the parties stipulated into evidence the postmortem pathological examination report performed by Dr. Robert Pfalzgraf, Deputy Coroner of Hamilton County. Dr. Pfalzgraf indicated in his report that it was his opinion that the cause of Baltzer's death was asthma. Furthermore, the report indicated that 80 ng/ml (nanogram per milliliter) of morphine and a trace amount of theophylline were present in Baltzer's blood at the time of the examination. Consequently, Dr. Pfalzgraf concluded that the presence of morphine may have contributed to Baltzer's death.

The parties also stipulated into evidence the results of postmortem blood test reports by the National Medical Services, Inc. ("NMS") and the Mayo clinic ("Mayo"). The NMS report indicated a theophylline level of 2.7 mcg/ml, and that optimum bronchodilator response is achieved at serum theophylline levels ranging from 10 to 15 mcg/ml, although there is considerable intersubject variation. The NMS report further indicated that the postmortem level of Albuterol, the medication contained in Proventil inhalers, was 3.0 ng/ml and that such level is

more than twice the amount of the peak plasma concentrations of 0.6 to 1.4 ng/ml attained after inhalation. The NMS report also indicated a morphine level of 34 ng/ml. The Mayo report indicated that no Prednisone was found in the blood specimen of Baltzer.

■ There is no dispute that Baltzer died due to an acute exacerbation of asthma. However, the issue before the court is whether the actions or inactions of defendant proximately caused Baltzer's death. Plaintiff asserts that Dr. Weston was negligent in failing to properly prescribe and medicate Baltzer's asthmatic condition. Dr. Weston prescribed Theodur (which contains theophylline), Prednisone, and Proventil inhalers for the treatment of Baltzer's medical condition. All three medications are accepted as within the standard of care for the treatment of asthma. The pharmacy records admitted into evidence as defendant's Exhibit 5 indicate that Baltzer was prescribed and dispensed the proper dosages of theophylline, Prednisone, and Proventil. Therefore, the court finds that Dr. Weston did not deviate from accepted standards of medical care in his prescriptions of asthmatic medications to Baltzer.

■ Plaintiff further asserts that Dr. Weston was negligent in failing to monitor the unrestricted use of the Proventil inhalers prescribed to Baltzer. Proventil inhalers are designed for self-administration. Plaintiff failed to prove by a preponderance of the evidence any standard of care which requires monitoring the use of Proventil inhalers. Therefore, the court finds that Dr. Weston did not deviate from any accepted standards of medical care regarding the use of Proventil inhalers by Baltzer.

■ Finally, plaintiff asserts that Dr. Weston was negligent in failing to intervene during Baltzer's prior episodes of asthmatic attacks. More specifically, plaintiff asserts that Dr. Weston was negligent for treating Baltzer only five out of the twenty-six times he reported to the infirmary for treatment of a pending asthma attack. The court does not construe this as falling below the standard of care in light of the fact that Baltzer was seen by a nurse on all visits to the infirmary. Furthermore, if Baltzer's condition warranted additional medical treatment, he would have been referred to an area hospital as he was on two occasions.

■ The court does find that Dr. Weston was negligent in his record keeping of Baltzer's medical file. Furthermore, Dr. Weston may have been negligent in his clinical testing of Baltzer's asthmatic condition. However, the court further finds that any negligence on the part of Dr. Weston was not the proximate cause of Baltzer's death.

Defendant submits that Baltzer's own actions and inactions were the proximate cause of his death. Both Dr. Master and Dr. Merigian testified that as an

asthmatic, Baltzer himself would be in the best position to know how and when he would need medical treatment. Therefore, Baltzer owed a duty to himself in the care and treatment of his asthma condition.

As previously stated, the pharmacy records indicate that Baltzer was properly prescribed and dispensed medications for the treatment of his asthma condition. The postmortem blood testing indicated that Baltzer had a trace amount of theophylline and no Prednisone in his blood at the time of his death. Therefore, the court finds that Baltzer was not taking his medications as prescribed. This being the finding, Baltzer alone would be responsible for the consequences of failing to take his medication as directed.

Testimony at trial established that Baltzer smoked cigarettes and continued to smoke despite Dr. Weston's advice to quit. Dr. Master testified that smoking can lower blood levels of theophylline by fifty percent. Again, Baltzer alone would be responsible for the consequences smoking would have on his medical condition.

Inmate Harris testified that Baltzer had been snorting heroin approximately six to seven months prior to his death. Inmate Harris further testified that Baltzer had snorted heroin at approximately 7:30 p.m. the night before his death. Postmortem blood testing supports this contention because morphine, a metabolite of heroin and a known respiratory depressant, was found in Baltzer's blood at the time of the autopsy. Once again, Baltzer alone was responsible for the consequences of ingesting heroin and for any effects it would have on his medical condition.

In view of the above, the court finds that plaintiff failed to prove by a preponderance of the evidence that any negligence of defendant was the proximate cause of Baltzer's death. Furthermore, defendant proved by a preponderance of the evidence, even though it is not incumbent upon defendant to do so, that Baltzer failed to care for himself and his own actions and inactions were the proximate cause of his death.

In conclusion, the court finds that Baltzer's actions of snorting heroin and smoking cigarettes, and his inactions of failing to take his medications as prescribed, taken in the aggregate, were the proximate cause of his death. Judgment is therefore rendered in favor of defendant.

*Judgment for defendant.*

RUSSELL LEACH, J., retired, of the Franklin County Municipal Court, sitting by assignment.